UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA K. MILLER and DEAN G. MILLER
                                    Plaintiffs,
                                                          5:09-CV-0038
v.                                                        (GTS/DEP)

ELEXCO LAND SERVS., INC.; ANSBRO
PETROLEUM CO., LLC; ANSCHUTZ
EXPLORATION CORP.; ANSCHUTZ CO.;
and THE ANSCHUTZ CORP.,
                                    Defendants.

_____

ANSBRO PETROLEUM CO., LLC; ANSCHUTZ
EXPLORATION CORP.; ANSCHUTZ CO.; and
THE ANSCHUTZ CORP.,
                                    Cross-Claimants,

v.

ELEXCO LAND SERVS., INC.
                                    Cross-Defendant.

_____

APPEARANCES:                                     OF COUNSEL:

MICHAELS & SMOLAK, P.C.                          LEE S. MICHAELS, ESQ.
  Counsel for Plaintiffs
P.O. Box 308
71 South Street
Auburn, New York 13021

RUPP BAASE PFALZGRAF                             R. ANTHONY RUPP, III, ESQ.
CUNNINGHAM & COPPOLA LLC                         JOSEPH G. ULATOWSKI, ESQ.
  Counsel for Defendant Elexco
424 Main Street, 1600 Liberty Building
Buffalo, New York 14202

SMITH, SOVIK, KENDRICK & SUGNET, P.C.            DANIEL R. RYAN, ESQ.
  Counsel for Defendants Anbro and Anschutz      AIMEE M. PAQUETTE, ESQ.
250 South Clinton Street, Suite 600
Syracuse, New York 13202

HON. GLENN T. SUDDABY, United States District Judge

**<u>MEMORANDUM-DECISION and ORDER</u>**

Currently before the Court, in this torts-to-land action filed by Lisa K. Miller and Dean

G. Miller ("Plaintiffs") against Elexco Land Services, Inc., Ansbro Petroleum Company, LLC,

Anschutz Exploration Corporation, Anschutz Company, and Anschutz Corporation

("Defendants"), are the following: (1) Plaintiffs' motion for partial summary judgment against

Defendant Elexco Land Services Inc. ("Defendant Elexco") on Plaintiffs' claim of trespass under

New York State common law and their claim of "timber trespass" under N.Y. REAL PROP. ACTS.

§ 861(1) (Dkt. No. 66);[1] (2) Defendant Elexco's cross-motion for partial summary judgment on

Plaintiffs' two aforementioned trespass claims (Dkt. No. 81);[2] (3) Anschutz Defendants' motion

to (1) dismiss Plaintiffs' Complaint for failure to join an indispensable party under Fed. R. Civ.

P. 19, and/or (2) obtain an order of common-law indemnification against Defendant Elexco (Dkt.

No. 80);[3] (4) Defendant Elexco's appeal from that portion of the Decision and Order issued by

---

[1]    Plaintiffs' motion also seeks partial summary judgment against Ansbro Petroleum Company, LLC, Anschutz Company, Anschutz Exploration Corporation, and Anschutz Corporation (collectively "Anschutz Defendants") on Plaintiffs' two trespass claims.  (Dkt. No. 66)  However, for the reasons set forth below in Part I.F.1. of this Decision and Order, the Court denies without prejudice Plaintiffs' motion against Anschutz Defendants.

[2]    Defendant Elexco's "cross-motion" also contains a separate motion for summary judgment on Plaintiffs' conversion claim.  (Dkt. No. 81.)  The Court notes that a "cross-motion" is "a competing request for relief or order *similar* to that requested by another party against the cross-moving party."  *Black's Law Dictionary* at 1106 (9th ed. 2009) [emphasis added]; *Horton v. Williams*, 08-CV-0513, 2010 WL 3338920, at *2 & n.2 (N.D.N.Y. Aug. 24, 2010); *Lent v. Fashion Mall Partners, L.P.*, 243 F.R.D. 97, 106 (S.D.N.Y. 2007); *U.S. v. Joe Murray's Point Lookout, Inc.*, 342 F. Supp. 92, 93 (S.D.N.Y. 1972); *New Hampshire Ins. Co. v. Diller*, 678 F. Supp.2d 288, 292, n.1 (D. N.J. 2009).  Because a request for summary judgment on Plaintiffs' *conversion claim* does not request relief that is "similar" to a request for summary judgment on Plaintiff's *two trespass claims*, the Court regards the former request as a "motion" and not a "cross-motion."  In any event, for the reasons set forth below in Part I.F.2. of this Decision and Order, the Court denies without prejudice Defendant Elexco's motion for summary judgment against Plaintiffs on their conversion claim.

[3]    Anschutz Defendants' "motion" also requests summary judgment on *all* of Plaintiffs' claims, and supports that request with a "Cross-Statement of Material Facts."  (Dkt.

United States Magistrate Judge David E. Peebles on September 29, 2010 ("September Order"), that directed Defendant Elexco to provide Plaintiffs with the statement of John Diescher taken under oath by counsel for Defendant Elexco on May 12, 2010 (Dkt. No. 77); (5) Plaintiffs' appeal from that portion of the Decision and Order issued Magistrate Judge Peebles on October 12, 2010 ("October Order"), that denied Plaintiffs' request to designate Robert Demeree as an expert at trial (Dkt. No. 79); and (6) Anschutz Defendants' and Defendant Elexco's motion for preclusion of the expert testimony and reports of Stephen E. Jaquith (Dkt. No. 80, Attach. 7; Dkt. No. 82, Attach. 9).

For the reasons set forth below, Plaintiffs' motion for partial summary judgment on their two trespass claims is granted; Defendant Elexco's cross-motion for partial summary judgment on those two trespass claims is denied; Anschutz Defendants' motion to dismiss Plaintiffs' Complaint for failure to join an indispensable party is denied; Anschutz Defendants' motion for an order of common-law indemnification against Defendant Elexco is denied without prejudice; Defendant Elexco's appeal from Magistrate Judge Peebles' September Order is denied; Plaintiffs' appeal from Magistrate Judge Peebles' October Order is denied; and Defendants' motions to preclude the expert testimony/reports of Stephen E. Jaquith is granted in part and denied in part.

---

No. 80, Attach. 1.)  As an initial matter, to the extent that Anscutz Defendants' "motion" requests summary judgment on Plaintiffs' two trespass claims, that "motion" is really a "cross-motion."  *See*, *supra*, note 2 of this Decision and Order.  In any event, for these reasons set forth below in Part I.F.1. of this Decision and Order, the Court denies without prejudice that portion of Anschutz Defendants' motion/cross-motion that requests summary judgment on all of Plaintiffs' claims.

## TABLE OF CONTENTS

I.  RELEVANT BACKGROUND ...............................................................5
   A.  Plaintiffs' Claims ...........................................................5
   B.  Undisputed Material Facts ...................................................8
   C.  Plaintiffs' Motion, and Defendant Elexco's Cross-Motion, for Partial
       Summary Judgment on Plaintiffs' Two Trespass Claims ........................10
   D.  Anschutz Defendants' Motion to Dismiss for Failure to Join an
       Indispensable Party .......................................................11
   E.  Anschutz Defendants' Motion for Common-Law Indemnification
       Against Defendant Elexco ..................................................12
   F.  Other Motions .............................................................13
       1.  Plaintiffs' Motion for Partial Summary Judgment Against
           Anschutz Defendants on Plaintiffs' Trespass Claims, and
           Anschutz  Defendants' Motion/Cross-Motion for Summary
           Judgment Against Plaintiffs on All of Their Claims ....................13
       2.  Defendant Elexco's Motion for Partial Summary Judgment
           on Plaintiffs' Conversion Claim .......................................14
   G.  Appeals from the Magistrate Judge's Orders ................................15
       1.  Defendant Elexco's Appeal from the September Order ....................15
       2.  Plaintiffs' Appeal from the October Order .............................16
   H.  Defendants' Motions to Preclude or Limit Expert Testimony .................17
II.  RELEVANT LEGAL STANDARDS .......................................................18
   A.  Legal Standard Governing Motion for Summary Judgment ......................18
   B.  Legal Standard Governing Motion to Dismiss for Failure to Join
       Indispensable Party .......................................................18
   C.  Legal Standard Governing Appeal from Non-Dispositive Order
       Issued by Magistrate Judge ................................................20
   D.  Legal Standard Governing Motion to Preclude or Limit
       Expert Testimony ..........................................................20
III.  ANALYSIS ......................................................................21
   A.  Plaintiffs' Motion, and Defendant Elexco's Cross-Motion, for Partial
       Summary Judgment on Plaintiffs' Two Trespass Claims .......................21
       1.  Plaintiffs' Trespass Claim Under New York State Common Law ............21
       2.  Plaintiffs' "Timber Trespass" Claim Under
           N.Y. REAL PROP. ACTS. § 861(1) ........................................26
   B.  Anschutz Defendants' Motion to Dismiss Plaintiffs' Complaint for
       Failure to Join an Indispensable Party ....................................27
   C.  Anschutz Defendants' Motion for Common-Law Indemnification
       Against Defendant Elexco ..................................................28
   D.  Magistrate Appeals ........................................................30
       1.  Defendant Elexco's Appeal .............................................30
       2.  Plaintiffs' Appeal ....................................................32
   E.  Defendants' Motions to Preclude or Limit Expert Testimony .................33

# I.     RELEVANT BACKGROUND

## A.     Plaintiffs' Claims

Generally, liberally construed, Plaintiffs' Complaint alleges as follows.

"[P]laintiffs were and still are owners in fee and possessors of certain partially agricultural and partially forested land in the Towns of Solon, Truxton, and Homer, New York." (Dkt. No. 1 at ¶ 2 [Compl.].)  "Upon information and belief," throughout the time period mentioned in the Complaint, "and prior to January 20, 2008, Anschutz Corporation was actively involved in oil and gas lease acquisition transactions in Cortland County, including oil and gas lease acquisition transactions regarding lands neighboring and bordering lands owned by Plaintiffs."  (*Id*. at ¶ 12.)  "Upon information and belief," before January 20, 2008, Elexco, Ansbro Petroleum Company, LLC, and Reserve Energy Exploration Company (hereinafter "Reserve Energy") "obtained numerous oil and gas leases from various landowners in Cortland County, New York."  (*Id*. at ¶¶ 15-17.)  "Upon information and belief, prior to January 20, 2008, Elexco and Reserve Energy assigned various oil and gas leases from various landowners in the Towns of Solon, Truxton, and Homer to Ansbro and/or Anschutz Exploration," who, as a result, became the owners of these oil and gas leases, several of which "pertain[ed] to lands bordering on lands of . . . [P]laintiffs."  (*Id*. at ¶¶ 18, 19.)

"Upon information and belief, at a time or times presently unknown to [P]laintiffs, and prior to January 20, 2008, Ansbro and/or Anschutz Exploration entered into one or more business contracts and/or agreements, for good consideration[,]" with Elexco, pursuant to which "Elexco contracted to enter upon land as to which Ansbro and/or Anschutz Exploration owned oil and gas leases . . . to perform or subcontract to perform certain land services for Ansbro and/or Anschutz Exploration."  (*Id*. at ¶¶ 20, 21.)  These land services included "seismic and

other geological studies seeking to determine the existence of certain mineral and natural gas and energy deposits within and below such lands, and the creation of certain crude roads on and removal of trees from certain lands, . . . including lands in the Towns of Solon, Truxton, and Homer, NY, . . . that bordered the lands of . . . [P]laintiffs. (*Id.* at ¶ 21.) "Elexco, acting on behalf of Ansbro and/or Anschutz Exploration, pursuant to said contract or contracts, . . . Ansbro and/or Anschutz Exploration, acting on its own behalf, and Reserve Energy[,] did not enter into and obtain any oil and gas lease, easement, right of way or permit from . . . [P]laintiffs to enter upon any of their lands. . . ." (*Id.* at ¶ 22.)

Before entering Plaintiffs' lands, Elexco, Ansbro and/or Anschutz Exploration had actual and constructive notice of Plaintiffs' ownership in their land based on (1) Plaintiffs' "recorded fee ownership interest" in the land, (2) "recorded tax records, tax maps, and other maps and records of Cortland County, NY," and (3) "in person and telephone discussions with . . . [P]laintiff Lisa K. Miller in which requests that she and . . . [P]laintiff Dean G. Miller enter into oil and gas leases pertaining to said lands had been refused." (*Id.* at ¶¶ 23-25.)[4] "Despite such actual and constructive notice, in the month of January 2008, and concluding on January 20, 2008, Elexco, acting on behalf of Ansbro and/or Anschutz Exploration, for good consideration, and/or Ansbro and/or Anschutz Exploration, acting individually, intentionally trespassed upon and entered upon [Plaintiffs'] the land . . . [and] created crude roads, cut down and removed

---

[4]          Plaintiffs also allege that Anschutz Corporation, "by reason of [their] active involvement in oil and gas lease acquisition transactions in Cortland County and oil and gas lease acquisition transactions with regard to lands neighboring and bordering [Plaintiffs'] lands . . ., knew or should have known, prior to January 2008, that . . . [P]laintiffs had not executed an oil and gas lease or other document that permitted any oil and gas lessee or the assignee of any oil and gas lessee to enter [Plaintiffs'] lands for any purpose . . . ." (Dkt. No. 1, at ¶ 31.)

trees, and damaged existing trees." (*Id*. at ¶ 26.)[5] "The[se] acts . . . caused various losses to . . . [P]laintiffs, primarily the loss of thousands of trees . . . , damage to trees that were not cut down and removed, and irreparable and reparable damage to significant portions of . . . [P]laintiffs' forested and unforested land." (*Id*. at ¶ 27.) "In [addition, during] the course of [their] intentional trespass upon . . . [P]laintiffs' lands, Elexco, Ansbro and/or Anschutz Exploration, also obtained geological and seismic information . . . , which [they] recorded and shared with Ansbro and/or Anschutz Exploration, and/or others." (*Id*. at ¶ 36.)[6]

Based on these allegations, Plaintiffs' Complaint may be liberally construed as asserting the following three claims: (1) a claim of trespass under New York State common law; (2) a claim of conversion under New York State common law; and (3) a claim of "timber trespass" under N.Y. REAL PROP. ACTS. § 861(1). (*See generally* Dkt. No. 1.) As relief, Plaintiffs seek compensatory and punitive damages and an additional four million dollars in punitive damages in the amount of up to six million dollars. (*Id*. at 9.)

---

[5] Plaintiffs also allege that, to the extent Ansbro and/or Anschutz Exploration, and Anschutz Company, as the parent of Ansbro and Anschutz Exploration, did not "commit such trespass, . . . tree removal and damage[,]" they are nonetheless vicariously liable because they contracted with Elexco to have the work performed that resulted in these damages. (*Id*. at ¶¶ 30, 31.) Plaintiffs further allege that "Anschutz Corporation, by reason of its active involvement in oil and gas lease acquisition transactions in Cortland County and oil and gas lease acquisition transactions with regard to lands neighboring and bordering [Plaintiffs'] lands . . . , is also vicariously liable" for the resulting damages. (*Id*. at 32.)

[6] Plaintiffs again allege that, even if Ansbro and/or Anschutz Exploration (and Anschutz Company, as the parent of Ansbro and Anschutz Exploration) did not trespass on their lands and/or know that the land belonged to Plaintiffs, they are nonetheless vicariously liable for Plaintiffs' damages based on the fact that they contracted with Elexco for the services that resulted in these damages. (*Id*. at ¶¶ 37, 38.)

**B.      Undisputed Material Facts**

The following is a summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 68, Attach. 11 [Plfs.' Rule 7.1 Statement] *with* Dkt. No. 83, Attach. 15 [Elexco Def.'s Rule 7.1 Response to Plfs.' Rule 7.1 Statement].)

Part of Defendant Elexco's business involves obtaining oil and gas leases and seismic permits from property owners for its clients.  Defendant Elexco utilizes employees and independent contractors to attempt to obtain oil and gas leases and/or seismic permits for its clients who, as lessees, have exclusive rights to conduct seismic operations under the terms of certain oil and gas leases.  Defendant Elexco was hired by the Anschutz Defendants to obtain seismic permits for a project called the "Homer 3D project," which encompassed the property that is the subject of this action (i.e., Plaintiffs' property).

In or about the fall of 2007, one of Defendant Elexco's leasing agents attempted to obtain an oil and gas lease from John Diescher, the former owner of Plaintiffs' property.  The information used by Defendant Elexco to identify Mr. Diescher as the property owner was 2003 county tax roll information.  Mr. Diescher informed the Defendant Elexco leasing agent that he had sold the land that is the subject of this lawsuit.

Defendant Elexco's leasing agent then researched "courthouse records" to identify the new owners of the property that is the subject of this lawsuit.  Defendant Elexco's leasing agent thereafter contacted Plaintiffs with regard to obtaining an oil and gas lease.  It was Defendant Elexco's policy, as well as industry policy, to detect any changes in property ownership through direct door-to-door contact with property owners.

Defendant Elexco did not obtain a seismic permit from Plaintiffs.  Instead, one of Defendant Elexco's seismic permit agents obtained a seismic permit from John Diescher, which

represented that the Anschutz Defendants had permission to enter Plaintiffs' property.  The permit obtained from Mr. Diescher contained the Anschutz Defendants' logo and ran directly from Mr. Diescher to the Anschutz Defendants.

It was the responsibility of Defendant Elexco's data-entry staff to input information from the leasing agent's daily reports into Defendant Elexco's proprietary computer program, called "U.S. Lease."  Defendant Elexco's seismic permit agents could not access any information contained in U.S. Lease including, but not limited to, information regarding a leasing agent's attempt to obtain an oil and gas lease from Plaintiffs.

Anschutz Defendants hired a company called "Conquest" to conduct seismic testing operations on the Homer 3D project, which project included the property that is the subject of this lawsuit.  Conquest hired subcontractors to assist it in acquiring seismic data, including performing preliminary seismic acquisition activities such as surveying, mulching, and line clearing.  Defendant Elexco produced certain permit-status maps for the Homer 3D project.

On January 20, 2008, Conquest's subcontractors entered Plaintiffs' property.  The entry on the property by Conquest's subcontractors damaged some trees.  After January 20, 2008, Defendant Elexco instituted procedures, one of which included "courthouse work," to verify property owner information.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statements and Rule 7.1 Responses is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.

**C.    Plaintiffs' Motion, and Defendant Elexco's Cross-Motion, for Partial Summary Judgment on Plaintiffs' Two Trespass Claims**

Generally, in support of their motion for partial summary judgment against Defendant Elexco, Plaintiffs argues as follows: (1) they are entitled to summary judgment on their common-law trespass claim because the record evidence establishes that Defendant Elexco directed William Shelton, a "landman," and Conquest, the seismic testing company hired by Anschutz Defendants to perform testing, to enter Plaintiffs' property; and (2) they are entitled to summary judgment on their claim of "timber trespass" under N.Y. REAL PROP. ACTS. § 861 because the record establishes that (a) Defendant Elexco "directed" Conquest to enter Plaintiffs' property by providing Conquest with a seismic permit and incorrect maps, (b) Defendant Elexco "designat[ed] . . . areas from which trees were to be cut down," and (c) in this way, they "caused to be cut, removed, injured, or destroyed" underwood, trees and timber on Plaintiffs' land, without Plaintiffs' consent.  (*See generally* Dkt. No. 68, Attach. 10 [Plfs.' Memo. of Law].)

In Defendant Elexco's response to Plaintiffs' motion for partial summary judgment, as well as in its cross-motion for partial summary judgment, it argues that Plaintiffs' motion should be denied because Defendant Elexco neither trespassed nor "vicariously" trespassed on Plaintiffs' property.  (*See generally* Dkt. No. 81, Attach. 21 [Def. Elexco's Mem. of Law], *and* Dkt. No. 83, Attach. 14 [Def. Elexco's Response Memo. of Law].)

In their reply, Plaintiffs argue that they are entitled to summary judgment against Defendant Elexco because (1) Defendant Elexco (a) "provided the maps and erroneous information to Conquest, which guided Conquest and its subcontractors, onto [Plaintiffs'] property where they mulched out the seismic trail[,] (b) "directly hired William Shelton . . . to enter [Plaintiffs'] property with Conquest[,]" (c) "designated the area from which trees were to be cut," and (2) negligence is not a necessary element of trespass.  (*See generally* Dkt. No. 84,

Attach. 13 [Plfs.' Reply Memo. of Law].)

In its reply on its cross-motion, Defendant Elexco reiterates previously advanced

arguments regarding Plaintiffs' two trespass claims.  (Dkt. No. 91.)  In addition, Defendant

Elexco argues that, because Plaintiffs failed to file a proper Rule 7.1 Response, instead filing a

"counter-statement of material facts" in opposition to Defendant Elexco's Rule 7.1 Statement,

the Court should deem as admitted the facts asserted in Defendant Elexco's Rule 7.1 Statement.

(*Id.*)[7]

### D.    Anschutz Defendants' Motion to Dismiss for Failure to Join an Indispensable Party

Generally, in support of their motion to dismiss Plaintiffs' Complaint, Anschutz

Defendants argue that, because Conquest and the various subcontractors who entered Plaintiffs'

property committed the torts of which Plaintiffs complain, they are indispensable parties whose

absence mandates the dismissal of Plaintiffs' Complaint under Fed. R. Civ. P. 19.  (Dkt. No. 80,

Attach. 7.)

In response, Plaintiffs argue Conquest and the various subcontractors who entered

Plaintiffs' property are permissible, not indispensable, parties, whose absence does not mandate

the dismissal of Plaintiffs' Complaint.  (Dkt. No. 84, Attach. 13.)

---

[7]    Because Defendant Elexco improperly filed its cross-motion for summary judgment on Plaintiffs' two trespass claims as a "motion" for summary judgment, the Court's Electronic Case Filing System incorrectly indicated that Defendant Elexco would be permitted to file a reply on that cross-motion.  (Dkt. No. 81.)  Of course, such a reply is not permitted without prior leave of the Court.  N.D.N.Y. L.R. 7.1(c).  However, rather than strike this reply, the Court has considered it, in part because it has already sanctioned Defendant Elexco for its improper motion practice.  *See*, *supra*, notes 1 and 3 of this Decision and Order; *see also*, *infra*, Part I.F.1. of this Decision and Order.

**E.    Anschutz Defendants' Motion for Common-Law Indemnification Against Defendant Elexco**

Generally, in support of their motion for an order of common-law indemnification, Anschutz Defendants argue that Defendant Elexco must indemnify them because (1) they delegated exclusive authority for obtaining seismic permits from landowners to Defendant Elexco, (2) they never supervised or controlled the manner and methods Defendant Elexco used to obtain the permits, and (3) therefore, the entry onto Plaintiffs' property by Conquest's subcontractors (who relied on the permits obtained by Defendant Elexco) was not the result of any negligent actions or inactions by Anschutz Defendants.  (Dkt. No. 80, Attach. 7.)

In response, Defendant Elexco argues that Anschutz Defendants' motion should be denied because (1) Defendant Elexco neither performed the work that caused Plaintiffs' alleged injury, nor directed, controlled, or supervised the work that caused Plaintiffs' alleged injury, and (2) the American Rule on attorney's fees precludes Anschutz Defendants from recovering attorney's fees on their indemnification claim.  (Dkt. No. 85, Attach. 7.)

In their reply, Anschutz Defendants argue that they are entitled to an order of indemnification because (1) Defendant Elexco breached its duty of care owed to them, not to Plaintiffs, and (2) Defendant Elexco had the power to supervise and direct the work of the subcontractors who entered Plaintiffs' land.  (Dkt. No. 88.)[8]

---

[8]    The Court notes that it has considered Defendant Elexco's argument, raised in a letter-brief, that Anschutz Defendants' reply memorandum of law was improperly filed (Dkt. No. 96).  The original submission that Anschutz Defendants filed October 29, 2010, was, at the same time, the following: (1) an opposition to Plaintiffs' motion for partial summary judgment on their two trespass claims; (2) a cross-motion for partial summary judgment on Plaintiffs' two trespass claims; (3) a separate motion for partial summary judgment on Plaintiffs' conversion claim; (4) a separate motion to dismiss Plaintiffs' Complaint for failure to join an indispensable party under Fed. R. Civ. P. 19; and (5) a separate motion for an order of indemnification.  (Dkt. No. 80.)  No

F.    **Other Motions**

1.    **Plaintiffs' Motion for Partial Summary Judgment Against Anschutz Defendants on Plaintiffs' Trespass Claims, and Anschutz Defendants' Motion/Cross-Motion for Summary Judgment Against Plaintiffs on All of Their Claims**

Plaintiffs' motion for partial summary judgment on their trespass claims was filed against both Defendant Elexco and Anschutz Defendants.  (Dkt. No. 66)  In their response to this motion, Anschutz Defendants failed to comply with Local Rule 7.1(c), regarding Responses to Statements of Material Facts.  (*See generally* Dkt. No. 81 [containing no such Response to Plfs.' Statement of Material Fact].)  *See also* N.D.N.Y. L.R. 7.1(a)(3) (stating that responses must properly admit or deny statements of material facts "in matching numbered paragraphs").  Ordinarily, this would lead the Court to deem any facts properly supported by Plaintiffs as "admitted" by Aschutz Defendants under Local Rule 7.1(c).  However, here, Plaintiffs committed the same error as committed by Anschutz Defendants.  Specifically, along with their (procedurally deficient) response to Plaintiffs' motion, Anschutz Defendants filed a motion/cross-motion for summary judgment against Plaintiffs on all of Plaintiffs' claims, supported by a "Cross-Statement of Material Facts."  (Dkt. No. 80, Attach. 1.)  In their response to this motion/cross-motion, Plaintiffs failed to comply with Local Rule 7.1(c), regarding Responses to Statements of Material Facts.  (Dkt. No. 84.)  For these reasons, the Court denies

_____

reply is permitted on a cross-motion without prior leave of the Court.  N.D.N.Y. L.R. 7.1(c). However, a reply is permitted on a dispositive motion.  N.D.N.Y. L.R. 7.1(b).  Under the circumstances, even if the Court were to assume (for the sake of argument) that Anschutz Defendants' motion for a conditional order of indemnification is non-dispositive in nature, the Court would permit Anschutz Defendants to file the number of pages that they did in their reply, given the fact that they had filed three motions.  However, the Court expresses its disapproval of Anschutz Defendants' unclear designation of its motion papers.

without prejudice both (1) Plaintiffs' motion for partial summary judgment against Anschutz

Defendants on Plaintiffs' trespass claims, and (2) Anschutz Defendants' motion/cross-motion for

summary judgment against Plaintiffs on all of Plaintiffs' claims.

### 2.    Defendant Elexco's Motion for Summary Judgment on Plaintiffs' Conversion Claim

Defendant Elexco's cross-motion also contains a separate motion for summary judgment

on Plaintiffs' conversion claim.  (Dkt. No. 81.)  In their response to this motion, Plaintiffs failed

to comply with Local Rule 7.1(c), regarding Responses to Statements of Material Facts.  (Dkt.

No. 84.)  Ordinarily, this would lead the Court to deem any facts properly supported by

Defendant Elexco as "admitted" by Plaintiffs under Local Rule 7.1(c).  *See, supra,* note 1 of this

Decision and Order.  However, here, Defendant Elexco fatally muddled its briefing on its motion

for summary judgment on Plaintiffs' conversion claim.  Specifically, it combined briefing on

what was technically a "motion" (which requested relief with regard to Plaintiffs' *conversion*

claim) with briefing on what was technically a "cross-motion" (which requested relief with

regard to Plaintiffs' two *trespass* claims).  For example, in its Statement of Material Facts in

support of its motion, not only did Defendant Elexco assert facts regarding Plaintiffs' conversion

claim, it asserted facts regarding Plaintiffs' two trespass claims.  (Dkt. No. 81, Attach. 20.)

*Horton v. Williams*, 08-CV-0513, 2010 WL 3338920, at *2 & n.2 (N.D.N.Y. Aug. 24, 2010)

(discussing definition of "cross motion"), *accord*, *Lent v. Fashion Mall Partners, L.P.*, 243

F.R.D. 97, 100 (S.D.N.Y. 2007); *New Hampshire Ins. Co. v. Diller*, 678 F. Supp.2d 288, 292, n.1

(D. N.J. 2009); *U.S. v. Joe Murray's Point Lookout, Inc.*, 342 F. Supp. 92, 93 (S.D.N.Y. 1972).

Defendant Elexco then compounded this error by, three days later, separately filing a response to

Plaintiffs' motion for summary judgment on their trespass claims, including Response to the

Statement of Material Facts.  (Dkt. No. 83, Attach. 15.)

Such a bifurcated motion practice is prohibited by Local Rule 7.1(c), which provides that "If a party makes a cross-motion, it must join its cross motion brief with its opposition brief, and this combined brief may not exceed twenty-five (25) pages in length.  A separate brief in opposition to the original motion is not permissible. . . .  The cross-moving party may not reply in further support of its cross-motion without the Court's prior permission."  N.D.N.Y. L.R. 7.1(c).  The effect of this motion practice was three-fold: (1) it enlarged the number of pages of memoranda of law that Defendant Elexco could submit regarding Plaintiffs' two trespass claims, pursuant to Local Rule 7.1(c); (2) it gave Defendant Elexco the last word regarding Plaintiffs' two trespass claims (by permitting Defendant Elexco to file a reply with regard to those claims, *see* Dkt. No. 91), in violation of Local Rule 7.1(c); and (3) it confused the Court (and no doubt Plaintiffs) by simultaneously (a) commingling Defendant Elexco's arguments regarding Plaintiffs' conversion claim with Defendant Elexco's arguments regarding Plaintiffs' two trespass claims, and (b) multiplying Defendant Elexco's arguments regarding Plaintiffs' two trespass claims.  For these reasons, the Court denies without prejudice Defendant Elexco's motion for summary judgment against Plaintiffs on Plaintiffs' conversion claim.

### G.   Appeals from the Magistrate Judge's Orders

#### 1.   Defendant Elexco's Appeal from the September Order

Generally, in support of its motion appealing the September Order, Defendant Elexco argues that Magistrate Judge Peebles erred when he directed Defendant Elexco to provide Plaintiffs with the statement of John Diescher taken under oath by counsel for Defendant Elexco on May 12, 2010, for three reasons: (1) Defendant Elexco's counsel's interview with John

Diescher was transcribed, and therefore contains dialogue that shows the mental impressions, conclusions, opinions, and legal theories of Defendant Elexco's counsel, which is opinion work-product protected from disclosure; (2) Mr. Diescher's statements are attorney work-product, immune from disclosure, because the statements are contained in a tangible document, and were prepared by Defendant Elexco's counsel during litigation and in anticipation of further litigation; and (3) Magistrate Judge Peebles did not have the authority to *sua sponte* direct Defendant Elexco to turn over these materials.[9]  (Dkt. No. 77, Attach. 2.)

In response, Plaintiffs argue as follows: (1) neither Mr. Diescher's affidavit nor his transcribed deposition is entitled to work-product protection because it does not involve notes, memoranda or other mental impressions of the lawyer who interviewed or took the statement from Mr. Diescher; and (2) even assuming that the affidavit and/or transcribed deposition was privileged as work-product when obtained, Defendant Elexco has since waived its right to the privilege by failing to disclose the existence of the statement in a privilege log as part of its continuing disclosure obligations under Fed. R. Civ. P. 26.  (Dkt. Nos. 64, 78.)

## 2.    Plaintiffs' Appeal from the October Order

Generally, in support of their motion appealing the October Order, Plaintiffs argue that Magistrate Judge Peebles erred when he denied Plaintiffs' request to designate Mr. Demeree as an expert at trial because, although Plaintiffs' requested expert disclosure was technically "late" (i.e., it occurred after the deadline set by the Court for expert disclosure), good cause exists to excuse their untimeliness.  (Dkt. No. 79.)

---

[9]    According to Defendant Elexco, Plaintiffs never filed a formal motion to compel the statements, and Magistrate Judge Peebles issued his decision without requesting briefing from the parties on the issue of whether the materials were protected from disclosure.

In response, Defendant Elexco argues as follows: (1) Plaintiffs' appeal should be dismissed because they failed to comply with Local Rule 72.1(b) before submitting their motion;[10] and (2) Plaintiffs have failed to establish the good cause excusing their untimely disclosure of Robert Demeree as an expert witness.  (Dkt. No. 100.)

### H.     Defendants' Motions to Preclude or Limit Expert Testimony

Generally, in support of their motions, Defendants argue that the expert testimony and reports of Stephen E. Jaquith should be precluded because (1) his anticipated testimony and reports are unreliable, and (2) his interpretation of N.Y. REAL PROP. ACTS. § 861 is incorrect as a matter of law.  (Dkt. No. 80, Attach. 7; Dkt. No. 82, Attach. 9.)

In their response, Plaintiffs argue that Mr. Jaquith's testimony should not be precluded because (1) his decision to count as "trees" only those over one-foot tall was well-founded, and (2) his method of counting the trees cannot be said to be unreliable as a matter of law.  (Dkt. No. 86, Attach. 6.)

In their reply, in addition to reiterating previously advanced arguments, Defendants argue as follows: (1) Plaintiffs have not established the reliability of Mr. Jaquith's decision to tally trees over one foot tall; (2) Plaintiffs have failed to show that Mr. Jaquith properly distinguished damaged items of underwood from damaged trees, in accordance with N.Y. REAL PROP. ACTS. § 861; and (3) Plaintiffs have failed to establish the reliability of Mr. Jaquith's hoop method.  (Dkt. Nos. 88, 89.)[11]

---

[10]     Specifically, Defendant Elexco argues that Plaintiffs "failed to specifically designate the order or part of the order from which they seek relief and the basis for their objection[, and] . . . failed to designate the contents of the record on appeal."  (Dkt. No. 100.)

[11]     The Court notes that, on November 1, 2010, the Court issued a Text Notice *sua sponte* granting Defendants leave to file a reply on their non-dispositive motion to preclude. (Text Order filed Nov. 1, 2010.)

## II.      RELEVANT LEGAL STANDARDS

### A.      Legal Standard Governing Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.      Legal Standard Governing Motion to Dismiss for Failure to Join Indispensable Party

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure to join a party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  "Rule 19 [of the Federal Rules of Civil Procedure] sets forth a two-step test for determining whether a court must dismiss an action for failure to join an indispensable party."  *In re WorldCom, Inc. Sec. Litig.*, 02-CV-3288, 2004 WL 2955237, at *2 (S.D.N.Y Dec. 22, 2004).  "First, the court must determine whether an absent party is a 'necessary' party under Rule 19(a)."  *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2955237, at *2.  An absent party should be joined, if feasible, where

> (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

"With respect to the second prong of Rule 19(a), 'there must be more than an unsupported assertion that [the non-joined party] has a claim to that interest.'" *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2955237, at *3 (quoting *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 140 [2d Cir. 2002]).  In the event that "the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)." *Jonesfilm*, 299 F.3d at 141.

"Where a court makes a threshold determination that a party is necessary under Rule 19(a) and joinder of the absent party is not feasible for jurisdictional or other reasons, the court must then determine whether the party is 'indispensable' under Rule 19(b)." *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2955237, at *3.  Under Fed. R. Civ. P. 19(b), the court must consider at least four factors in deciding whether a party is indispensable: (1) "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties"; (2) "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided"; (3) "whether a judgment rendered in the person's absence will be adequate"; and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."  Fed. R. Civ. P. 19(b).

Within the Second Circuit, district courts must "take a 'flexible approach' under Rule 19(b) when deciding whether parties are indispensable." *Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002). "Very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Universal Reins. Co.*, 312 F.3d at 87.

C.    **Legal Standard Governing Appeal from Non-Dispositive Order Issued by Magistrate Judge**

"Pre-trial discovery issues are generally considered non-dispositive matters." *Statewide Aquastore, Inc. v. Pelseal Techn., LLC*, 06-CV-0093, 2010 WL 610685, at *2 (N.D.N.Y. Feb. 17, 2010) (Scullin, J.). "When considering an appeal from a magistrate judge's ruling on a non-dispositive matter, a district court will modify or set aside any portion of the magistrate judge's ruling that it finds to be 'clearly erroneous or contrary to law.'" *Statewide Aquastore, Inc.*, 2010 WL 610685, at *2 (quoting 28 U.S.C. § 636[b][1][A], and Fed. R. Civ. P. 72[a]).

A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp.2d 70, 74 (N.D.N.Y. 2000) (Scullin, J.). "Considering that magistrate judges are given broad discretion with respect to pre-trial discovery matters, reversal is warranted only when that discretion is abused." *Tompkins*, 92 F. Supp.2d at 74.

D.    **Legal Standard Governing Motion to Preclude or Limit Expert Testimony**

The role of the trial judge is to act as a "gatekeeper" with respect to expert testimony to ensure that such testimony is both relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993). The *Daubert* rule applies to scientific knowledge, as well as technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The determination as to the relevance and reliability of such testimony is committed to the sound discretion of the trial court. *See Kumho Tire Co., Ltd.,*

20

526 U.S. at 158; s*ee also King v. Brandtjen & Kluge, Inc*., 94-CV-0411, 2001 WL 1804345, at

*2 (W.D.N.Y. June 20, 2001) (noting that, although "*Daubert* set forth specific factors, such as

testing, peer review, error rates, and 'acceptability' in the relevant scientific community, which

the trial court may consider in determining [reliability,] . . . the *Daubert* test is flexible and its

list of specific factors neither necessarily nor exclusively applies to all experts or in every case.")

(citation omitted).

   For a court to admit specialized expert testimony, the witness must be "qualified as an

expert by knowledge, skill, experience, training or education . . . ."  Fed. R. Evid. 702.  As with

the exclusion of expert testimony for lack of relevance or reliability, "[t]he exclusion of expert

testimony for failing to qualify under Rule 702 of the Federal Rules of Evidence lies within the

district court's broad discretion . . . ." *Morse/Diesel, Inc. v. Trinity Indust., Inc*., 67 F.3d 435, 444

(2d Cir. 1995).

## III.    ANALYSIS

### A.    Plaintiffs' Motion, and Defendant Elexco's Cross-Motion, for Partial Summary Judgment on Plaintiffs' Two Trespass Claims

#### 1.    Plaintiffs' Trespass Claim Under New York State Common Law

   As stated above in Part I.C. of this Decision and Order, Plaintiffs seek partial summary

judgment on their common-law trespass claim because it is undisputed that (1) they never

permitted any Defendant (or any third party involved in seismic testing) to enter their property,

(2) Defendant Elexco hired William Shelton, a "landman," to enter property with Conquest, the

seismic testing company hired by Anschutz Defendants to perform testing (and cut down trees in

the process), and (3) Defendant Elexco provided Conquest with the seismic permit and incorrect

maps, which caused Conquest to conduct the testing on Plaintiffs' property.  Conversely,

Defendant Elexco seeks partial summary judgment on Plaintiffs' common-law trespass claim because it neither trespassed nor "vicariously" trespassed on Plaintiffs' property.  Based on the current record, the Court accepts Plaintiffs' argument and rejects Defendant Elexco's argument.

"Under New York law, trespass is the intentional invasion of another's property." *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) (citing *Ivancic v. Olmstead*, 488 N.E.2d 72, 74 [N.Y. 1985], *cert. denied*, 476 U.S. 1117 [1986]).  "To be liable, the trespasser 'need not intend or expect the damaging consequences of his intrusion[;]' rather, he need only 'intend the act which amounts to or produces the unlawful invasion.'"  *Scribner*, 84 F.3d at 557 (quoting *Phillips v. Sun Oil Co.*, 121 N.E.2d 249, 250-51 [N.Y. 1954]); *see also Burger v. Singh*, 816 N.Y.S.2d 478, 480 (N.Y. App. Div., 2d Dept. 2006) ("A person who enters upon the land of another, without the owner's permission, whether innocently or by mistake, is a trespasser.").  "The intrusion itself 'must at least be the immediate or inevitable consequence of what [the trespasser] willfully does, or which he does so negligently as to amount to willfulness.'"  *Id.* (quoting *Phillips*, 121 N.E.2d at 251).

Here, it is undisputed that Conquest's subcontractors entered Plaintiffs' property, without Plaintiffs' consent, and damaged trees.  As a result, it appears possible that, had Plaintiffs brought a trespass claim against Conquest's subcontractors, they would be entitled to summary judgment.  However, for Defendant Elexco to be liable for Conquest's subcontractors' trespass, the record evidence must establish that Defendant Elexco "caused or directed" this trespass.  *See Spellburg v. South Bay Realty, LLC*, 49 A.D.3d 1001, 1002 (N.Y. App. Div., 3d Dept. 2008) ("Even though defendants did not enter plaintiff's land, defendants can be held liable for trespass if they 'caused or directed another person to trespass'" [quoting *Golonka v. Plaza at Latham*, 270 A.D.2d 667, 669 [N.Y. App. Div., 3d Dept. 2000]).

Defendant Elexco argues that it did not cause or direct Conquest (or its subcontractors) to enter Plaintiffs' property because it neither contracted for, nor ordered, the trespass to occur.  In support of this argument, Defendant Elexco points out that it did not have a contractual relationship with any of the trespassers, and did not provide direct instructions to any of the trespassers to enter Plaintiffs' property for the purpose of performing mulching or line-clearing activities.  Rather, Defendant Elexco argues that its only involvement in the trespassers' entry onto Plaintiffs' property consisted of obtaining the necessary permits to allow the entry to be possible, which is too far removed from the tort to give rise to liability.  For this reason, Defendant Elexco argues that it was not reasonably foreseeable that the harm that Plaintiffs suffered would result from its actions.

As an initial matter, it is undisputed that (1) Defendant Elexco was hired by the Anschutz Defendants to obtain seismic permits for the Anschutz Defendants, and (2) the seismic permit that Defendant Elexco obtained (from Mr. Diescher) for the Anschutz Defendants permitted the Anschutz Defendants to enter Plaintiffs' property.  In other words, Defendant Elexco knew that the Anschutz Defendants were relying on it to obtain the approval necessary for them to enter Plaintiffs' property.  As a result, the Court rejects Defendant Elexco's argument that it did not cause Conquest's subcontractors to enter Plaintiffs' property because, but for Defendant Elexco obtaining the permit, Conquest's subcontractors would not have entered Plaintiffs' property.  In addition, the Court rejects Defendant Elexco's argument that it was not reasonably foreseeable that, as a result of it obtaining a seismic permit for the Anschutz Defendants to enter Plaintiffs' property, one or more individuals (possibly including the agents of Anschutz Defendants) would enter Plaintiffs' property.[12]

---

[12]     The Court notes that, generally, New York State courts employ a standard that essentially uses reasonable foreseeability and direct consequences as factors in determining

Furthermore, the Court rejects Defendant Elexco's argument that it cannot be held liable for Conquest's subcontractors' trespass because (1) Defendant Elexco did not know the purpose for which it was obtaining a seismic permit, and (2) it could not reasonably foresee the damages that resulted from obtaining the permit.  The seismic permit that Defendant Elexco's representative executed (on behalf of the Anschutz Defendants) with John Diescher expressly stated that the permit granted the Anschutz Defendants permission to "conduct seismic and/or geological testing" on Plaintiffs' property.  (Dkt. No. 68, Attach. 7.)  Moreover, as stated above, "[t]o be liable, the trespasser need not intend or expect the damaging consequences of his intrusion[;] rather, he need only intend the act which amounts to or produces the unlawful invasion."  *Scribner*, 84 F.3d at 557.  Here, Defendant Elexco intended to, and did, obtain a permit, which caused the trespass by Conquest's subcontractors.

Finally, the Court rejects Defendant Elexco's argument that, because it did not enter into a contract with Conquest (or its subcontractors), it did not direct Conquest (or its subcontractors) to trespass on Plaintiffs' property.  The record evidence establishes that Defendant Elexco entered into a contract with the Anschutz Defendants under which Defendant Elexco promised to

---

proximate causation.  *See Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314-15 (N.Y. 1980) ("Depending upon the nature of the case, a variety of factors may be relevant in assessing legal cause. . . . [T]he plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury . . . .  Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence . . . .").  The Court notes further that, while the New York standard uses the term "substantial cause" in defining proximate causation, the *Restatement (Third) of Torts* has moved away from using that term.  *See Restatement (Third) of Torts*, § 29, Comment: a. History & *Reporter's Note* (2011) ("The 'substantial factor' requirement for legal cause in the Second Restatement of Torts has often been understood to address proximate cause, although that was not intended. Because the rules in this Chapter address the grounds for limiting liability with greater precision than the substantial-factor standard, this Restatement does not use that term. . . . [T]he substantial-factor requirement contained in the Restatement Second of Torts was intended only to address factual causation, although that has been much misunderstood.").

"diligently, using [its] best efforts, acquire for [the Anschutz Defendants] oil and gas interests or perform such other duties s assigned."  (Dkt. No. 68, Attach. 8.)  Under this contract, "[r]eimbursement to [Defendant Elexco] for payments to owners of the oil and gas interests acquired by [Defendant Elexco] [was] *expressly contingent upon* the *valid* execution and delivery of a satisfactory oil and gas lease or assignment to [the Anschutz Defendants] covering the interests."  (*Id.* [emphasis added].)  The record evidence further establishes that a representative of Defendant Elexco, acting on behalf of the Anschutz Defendants, entered into a contract with John Diescher, pursuant to which the Anschutz Defendants were permitted to enter the property that is the subject of this action (i.e., Plaintiffs' property).  In other words, Defendant Elexco "designated the area" that the Anschutz Defendants could enter,[13] and therefore directed the trespass.[14]  In addition, the Anschutz Defendants' ability to enter the property was necessary for the contract between Defendant Elexco and the Anschutz Defendants to be completed with regard to the property for which the permit was obtained (i.e., Defendant Elexco would not be reimbursed for monies paid to John Diescher unless the permit was valid). The fact that Defendant Elexco's principal (the Anschutz Defendants) chose to hire another

---

[13]     *See Axtell*, 222 A.D.2d at 805-806 ("Defendant contends that plaintiffs cannot pursue such an action against him because he did not cut down their trees and, further, since Westfall, Wagner and the logger hired by Wagner were not his agents, he cannot be vicariously liable. Even assuming these entities were independent contractors, this does not provide defendant with an impenetrable shield for it has long been the law of this State that property owners are not protected from liability for a trespass committed by an independent contractor if they directed the trespass or such trespass was necessary to complete the contract. . . .   In this instance, liability was properly imposed upon defendant since the credible evidence shows that he designated the area from which the trees were to be cut, going so far as to direct the logger to cut 30 trees on plaintiffs' land rather than 30 on his own land.").

[14]     *Cf. Brown v. Arcady Realty Corp.*, 1 A.D.3d 753, 755-56 (N.Y. App. Div., 3d Dept. 2003) (finding that adjacent property owner did not "direct" independent contractor's trespass onto plaintiff's land because adjacent property owner "*correctly located* the utility pole on the common boundary and directed [the independent contractor] to stay east of the line") (emphasis added).

agent to actually enter the property does not create grounds under which Defendant Elexco may escape liability.

For these reasons, Plaintiffs' motion for partial summary judgment on their common-law trespass claim is granted, and Defendant Elexco's cross-motion for partial summary judgment on this claim is denied.

### 2.    Plaintiffs' "Timber Trespass" Claim Under N.Y. REAL PROP. ACTS. § 861(1)

As stated above in Part I.C. of this Decision and Order, Plaintiffs seek partial summary judgment on their statutory trespass claim because the record establishes that (1) Defendant Elexco "directed" Conquest to enter Plaintiffs' property by providing Conquest with a seismic permit and incorrect maps, (2) Defendant Elexco "designat[ed] . . . areas from which trees were to be cut down," and (3) in this way, they "caused to be cut, removed, injured, or destroyed" underwood, trees and timber on Plaintiffs' land, without Plaintiffs' consent.  Conversely, Defendant Elexco seeks partial summary judgment on Plaintiffs' statutory trespass claim because it neither trespassed nor "vicariously" trespassed on Plaintiffs' property.  Based on the current record, the Court accepts Plaintiffs' argument and rejects Defendant Elexco's arguments.

N.Y. REAL PROP. ACTS. § 861(1) provides, in pertinent part, as follows:

> If any person, without the consent of the owner thereof, cuts, removes, injures or destroys, or causes to be cut, removed, injured or destroyed, any underwood, tree or timber on the land of another or on the common or other land of a city, village, town or county, or damages the land in the course thereof, an action may be maintained against such person for treble the stumpage value of the tree or timber or two hundred fifty dollars per tree, or both and for any permanent and substantial damage caused to the land or the improvements thereon as a result of such violation.

In other words, Plaintiffs are entitled to partial summary judgment on this claim if they establish that there is no genuine issue of material fact that, without Plaintiffs' consent,

Defendant Elexco "cause[d] to be cut, removed, injured or destroyed, any underwood, tree or timber" on Plaintiffs' land.  Having already succeeded on its common law trespass cause of action, in order to succeed on this "timber trespass" claim, as it is referred to by some New York courts,[15] Plaintiffs must establish only that underwood, tree or timber was cut, removed, injured or destroyed.  Here, this fact is undisputed.  (*Compare* Dkt. No. 68, Attach. 11, at ¶ 15 *with* Dkt. No. 83, Attach. 15, at ¶ 15.)

For these reasons, Plaintiffs' motion for partial summary judgment on their statutory "timber trespass" claim is granted, and Defendant Elexco's cross-motion for partial summary judgment on this claim is denied.[16]

### B.    Anschutz Defendants' Motion to Dismiss Plaintiffs' Complaint for Failure to Join an Indispensable Party

As stated above in Part I.D. of this Decision and Order, Anschutz Defendants seek the dismissal of Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(7), based on Plaintiffs' failure to join in this action the subcontractors of Conquest who trespassed on Plaintiffs' property, who are indispensable parties under Fed. R. Civ. P. 19.  Based on the current record, the Court rejects the Anschutz Defendants' argument.

Even assuming that the subcontractors of Conquest would be liable to Plaintiff (if Plaintiffs asserted claims against them in this action), the subcontractors of Conquest would, at most, be a joint tortfeasor of Defendant Elexco's.  "Joint tortfeasors, however, are not indispensable parties, but merely permissive parties."  *City of New York v. Waterfront Airways,*

---

[15]    *See, e.g., Green Harbour Homeowners' Ass'n, Inc. v. Ermiger*, 889 N.Y.S.2d 687, 689 (N.Y. App. Div., 3d Dept. 2009).

[16]    The Court notes that, in reaching its decision, it has considered the arguments contained in Defendant Elexco's letter-brief in support of its motion to strike portions of an affidavit of Stephen E. Jaquith (Dkt. No. 94), as well as the arguments contained in Plaintiffs' response to that letter-brief (Dkt. No. 97).

*Inc.*, 620 F. Supp. 411, 413 (S.D.N.Y. 1985) (noting that "[t]he reasons for this general rule are that joint and several liability permits the plaintiff to recover full relief from any one of the responsible parties, which party then has the option of suing for contribution or indemnity").  For example, in Parts III.A.1 and III.A.2 of this Decision and Order, the Court concluded that Plaintiffs are entitled to summary judgment on their two trespass claims against Defendant Elexco, despite the fact that the subcontractors who trespassed on Plaintiffs' property were not parties to this action.

For this reason, Anschutz Defendants' motion to dismiss for failure to join an indispensable party is denied.

### C. Anschutz Defendants' Motion for Common-Law Indemnification Against Defendant Elexco

As stated above in Part I.E. of this Decision and Order, Anschutz Defendants seek an order of common-law indemnification from Defendant Elexco because (1) Anschutz Defendants delegated exclusive authority for obtaining seismic permits from landowners to Defendant Elexco, (2) Anschutz Defendants never controlled or had a duty to supervise the manner and methods Defendant Elexco used to obtain the permits, and (3) therefore, the entry onto Plaintiffs' property by Conquest's subcontractors (who relied on the permits obtained by Defendant Elexco) was not the result of any negligent actions or inactions by Anschutz Defendants.

"The principle of common-law, or implied, indemnification permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party." *Bellefleur v. Newark Beth Israel Med. Ctr.*, 66 A.D.3d 807, 808 (N.Y. App. Div. 2 Dept. 2009).  "If, in fact, an injury can be attributed solely to the negligent performance or nonperformance of an act solely within the province of the contractor, then the contractor may be held liable for indemnification to an owner." *Bellefleur*, 66 A.D.3d at 808 (quotation omitted).

28

"To establish their claim for common-law indemnification, the [party seeking indemnification is] required to prove not only that they were not negligent, but also that the proposed indemnitor . . . responsible for negligence that contributed to the accident or, in the absence of any negligence, had the authority to direct, supervise, and control the work giving rise to the injury." *Id.*

As an initial matter, Defendant Elexco does not argue, nor is there evidence in the record establishing, that Anschutz Defendants were negligent in hiring Defendant Elexco to obtain the seismic permit that Conquest used to conduct seismic testing. Moreover, it is undisputed that Defendant Elexco was hired by the Anschutz Defendants to obtain seismic permits for the Anschutz Defendants.

In addition, as an agent of the Anschutz Defendants, Defendant Elexco had "a duty to use reasonable efforts to give [its] principal information which is relevant to affairs entrusted to [it] and which, as the agent has notice, the principal would desire to have . . . ." *Cristallina S.A. v. Christie, Manson & Woods Intern., Inc.*, 117 A.D.2d 284, 293 (N.Y. App. Div., 1st Dept. 1986). By relying on information that was not up to date to obtain the seismic permit from Mr. Diescher to enter Plaintiffs' property (despite the fact that Diescher had previously informed a leasing agent from Defendant Elexco that he had sold his land to Plaintiffs), it would appear that Defendant Elexco failed to use reasonable efforts to provide the Anschutz Defendants with information relevant to the affairs entrusted to it, which it knew the Anschutz Defendants would desire. In this way, Defendant Elexco appears to have breached its duty to the Anschutz Defendants. In addition, as noted in Part III.A.1. of this Decision and Order, this breach appears to have caused the subcontractors hired by Conquest to trespass on Plaintiffs' property.

However, there has been no finding of liability by Anschutz Defendants as against Plaintiff. In other words, Anschutz Defendants have not been "compelled to pay for the wrong

of another." *Bellefleur*, 66 A.D.3d at 808.  As a result, Anschutz Defendants' motion for an order of indemnification is denied without prejudice as premature.

> ### D.      Magistrate Appeals

> #### 1.      Defendant Elexco's Appeal

As stated above in Part I.E.1. of this Decision and Order, Defendant Elexco argues that Magistrate Judge Peebles erred when he directed it to provide Plaintiffs with the transcribed interview of John Diescher taken under oath by counsel for Defendant Elexco on May 12, 2010 (hereinafter "the Transcribed Interview"), for three reasons: (1) Defendant Elexco's counsel's interview with John Diescher was transcribed, and therefore contains dialogue that shows the mental impressions, conclusions, opinions, and legal theories of Defendant Elexco's counsel, which is opinion work-product protected from disclosure; (2) Mr. Diescher's statements are attorney work-product, immune from disclosure, because the statements are contained in a tangible document, and were prepared by Defendant Elexco's counsel during litigation and in anticipation of further litigation; and (3) Magistrate Judge Peebles did not have the authority to *sua sponte* direct Defendant Elexco to turn over the transcribed statement of John Diescher. After carefully considering Defendant Elexco's arguments, the Court rejects each of those arguments.

As an initial matter, the work product doctrine does not generally extend to facts, which should be freely discoverable.  *Lugosch v. Congel*, 00-CV-0784, 2006 WL 931687, at *16 (N.D.N.Y. Mar. 7, 2006) (Treece, M.J.), *rejected in part on other grounds*, 2006 WL 6651777 (N.D.N.Y. May 5, 2007) (Mordue, C.J.).  Thus, to the extent the Transcribed Interview is akin to an affidavit, it is discoverable.  As a result, the Court rejects Defendant Elexco's argument that, because the Transcribed Interview was transcribed, it constitutes *per se* opinion work product.

However, even assuming that it was clearly erroneous for Magistrate Judge Peebles to find that, under the circumstances, the Transcribed Interview is not opinion work product, the Court would nonetheless affirm Magistrate Judge Peebles's ultimate conclusion (i.e., that Defendant Elexco must turn over to Plaintiffs a copy of the Transcribed Interview).  This is because a transcribed, sworn-to statement from a non-party witness who possesses information relevant to the underlying dispute is discoverable absent a claim that the information contained in the statement is privileged or subject to protection as trial preparation material.  *See* Fed. R. Civ. P. 26(b)(1) (noting that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense") (emphasis added); Fed. R. Civ. P. 26(b)(5).  As a result, in order for Defendant Elexco's counsel to assert the work product doctrine, he must first have provided Plaintiffs with a privilege log.  *See Lugosch*, 2006 WL 931687, at *16 (noting that "[f]ailure to timely provide the privilege log or objection [to a request for production of documents] constitutes a waiver of any of the asserted privileges"); *accord, NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 127 (N.D.N.Y. 2007) (Treece, M.J.); *see also* Fed. R. Civ. P. 26(b)(5). Here, Defendant Elexco's counsel failed to do so.

Furthermore, the Court rejects Defendant Elexco's argument that there is a distinction between opinion work product and attorney work product, with only "ordinary" or attorney work product "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998); *see Serin v. N. Leasing Sys., Inc.*, 06-CV-1625, 2010 WL 6501666, at *1 n.1 (S.D.N.Y. Oct. 6, 2010) ("There are two types of work product, ordinary or fact, and opinion. Fact work product may encompass factual material, including the result of a factual investigation. . . . In contrast, opinion work

31

product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product.'") (quoting *Adlman*, 134 F.3d at 1197 [2d Cir. 1998]).  Moreover, to the extent Defendant Elexco is attempting to assert attorney-client privilege, the Court rejects that argument because Mr. Diescher is a third party to this action.

Finally, the Court notes that, pursuant to Fed. R. Civ. P. 26(b)(1), a court may, "[f]or good cause, . . . order discovery of any matter relevant to the subject matter involved in the action."  As a result, the Court finds that Magistrate Judge Peebles had the authority to *sua sponte* direct Defendant Elexco to turn over the deposition materials in dispute.

For these reasons, the Court affirms Magistrate Judge Peebles's conclusion that Defendant Elexco must provide Plaintiffs with the transcribed statement of John Diescher taken under oath by counsel for Defendant Elexco on May 12, 2010.

### 2.      Plaintiffs' Appeal

As stated above in Part I.E.1. of this Decision and Order, Plaintiffs argue that Magistrate Judge Peebles erred when he denied their request to designate Mr. Demeree as an expert at trial because, although Plaintiffs' requested expert disclosure was technically "late" (i.e., it occurred after the deadline set by the Court for expert disclosure), good cause exists to excuse their untimeliness.

Pursuant to the Uniform Pre-Trial Scheduling Order, the deadline to complete discovery in this action was April 30, 2010.  (Dkt. No. 16.)  The Court notes further that Plaintiffs were required to identify any experts "[n]o later than 90 days prior to the discovery deadline," and, in the event Plaintiffs sought to use an expert to "contradict or rebut evidence on the same subject matter identified by another," the deadline to disclose this expert was thirty days before the discovery deadline.  (*Id*.)  On December 18, 2009, the discovery deadline was extended to

August 31, 2010.  (Text Minute Entry dated 12/18/2009.)  Based on this extension, Plaintiffs had

until June 1, 2010, to identify any expert they sought to call at trial.  They failed to do so.

Instead, on October 1, 2010, Plaintiffs sought permission to either (1) subpoena an individual

retained by Defendant Elexco as an expert, whom Defendant Elexco decided not to designate as

an expert at trial apparently based on his apparent "pro-Plaintiff" definition of the word "tree," or

(2) disclose him as an expert.  (Dkt. No. 70, Attach. 7.)

As an initial matter, the Court finds that Plaintiffs are incorrect in arguing that Mr.

Demeree was retained by Defendant Elexco as an expert.  Rather, Defendant Elexco identified

him in their initial disclosures only as an individual likely to have discoverable information.

(Dkt. No. 73, Attach. 7.)  Moreover, the record establishes that Plaintiffs were aware of Mr.

Demeree as an evaluator (and possible expert) as early as January 2008, when he performed a

pre-suit inspection of their property.  (Dkt. No. 70, Attach. 2, 3.)  Thus, it cannot be said that

Magistrate Judge Peebles erred in not finding good cause to excuse Plaintiffs' untimely request.

As a result, the Court affirms Magistrate Judge Peebles' denial of Plaintiffs' request to

designate Robert Demeree as an expert witness to be called at trial on their behalf.

### E.      Defendants' Motions to Preclude or Limit Expert Testimony

As stated above in Part I.F. of this Decision and Order, Defendants seek to preclude the

expert testimony and reports of Stephen E. Jaquith because (1) his anticipated testimony and

reports are unreliable, and (2) his interpretation of N.Y. REAL PROP. ACTS. § 861 is incorrect as

a matter of law.

Turning first to Defendants' second argument, Mr. Jaquith testified (and indicated in his

report) that something may be defined as a "tree," for purposes of calculating damages, after it

reaches a height of one foot.  (Dkt. No. 82, Attach. 6, at 53; Dkt. No. 87, Attach. 2.)  Mr. Jaquith

further testified (and indicated in his report) that a "tree" may be a seedling or sapling.  (Dkt. No. 82, Attach. 6, at 30-31, 54; Dkt. No. 87, Attach. 2.)

Because N.Y. REAL PROP. ACTS. § 861 does not define the word "tree," the definition of that word is a question of law for the Court to decide.  Furthermore, because Mr. Jaquith's definition of the word "tree" states a legal conclusion, the Court need not accept that definition. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion.").  In defining the word "tree," the Court notes that, under N.Y. REAL PROP. ACTS. § 861, the word "underwood" is separate and distinct from the word "tree."  *See* N.Y. REAL PROP. ACTS. § 861(1).  In other words, a "tree" cannot be "underwood," under N.Y. REAL PROP. ACTS. § 861.

Because the New York State Legislature did not define "underwood" in N.Y. REAL PROP. ACTS. § 861, yet clearly intended to draw a distinction between "underwood" and "tree," the Court finds it useful to define the word "underwood" (i.e., in order to help understand what a "tree" is not).  After carefully reviewing more than a half-dozen dictionaries, the Court concludes that "underwood" (which, again, is not a "tree" under N.Y. REAL PROP. ACTS. § 861) is commonly understood to refer to such things as "seedlings," "saplings" and "small trees."  For example, *Webster's Ninth New Collegiate Dictionary* defines "underwood" as "undergrowth, [or] underbrush," in turn defining "undergrowth" as "low growth on the floor of a forest including *seedlings* and *saplings*, shrubs, and herbs," and defining "underbrush" as "shrubs, bushes, or *small trees* growing beneath large trees in a wood or forest: brush."  *Webster's Ninth New Collegiate Dictionary* 1285-87 (Merriam-Webster, 9th ed. 1991) [emphasis added]; *see also, infra,* note 15 of this Decision and Order.  Similarly, "underwood" is commonly understood to

34

refer to such things as "bushes," "shrubs," "brush," "ferns," "herbs," "branches of trees cut off," and "cut or broken twigs or branches."[17]

Because "seedlings," "saplings" and "small trees" are "underwood," and "underwood" is not "trees" under N.Y. REAL PROP. ACTS. § 861, the Court finds that "seedlings," "saplings" and "small trees" are not "trees" under N.Y. REAL PROP. ACTS. § 861.  Rather, a tree is something larger than these things.  This definition of "tree" is consistent with the spirit of the N.Y. REAL PROP. ACTS., which is to "*reasonably* restore the lands affected by the violation to their condition immediately before the violation . . . ."  N.Y. REAL PROP. ACTS. § 861(1) [emphasis added].  Simply stated, deeming "seedlings," "saplings" and "small trees" to be "trees" would unreasonably enable a plaintiff to recover $250 for an item that, as Mr. Jaquith testified, has a

---

[17]      For example, *Webster's Third New College Dictionary* defines "underwood" as "underbrush," in turn defining "underbrush" as "small trees, shrubs, or similar plants growing beneath the taller trees in a forest."  *Webster's Third New College Dictionary* 1229, 1231 (Houghton Mifflin Harcourt, 3d ed. 2008).  The *Oxford English Dictionary* defines "underwood" as "small trees or shrubs, coppice-wood or brush-wood, growing beneath higher timber trees," in turn defining "brushwood" as "cut or broken twigs or branches; small wood" or "small growing trees ans shrubs; thicket; underwood."  *Oxford English Dictionary* (Oxford Univ. Press, 2d ed. 1989).  The *Random House Dictionary* defines "underwood" as "woody shrubs or small trees growing among taller trees."  *Random House Dictionary* (Random House 2011).  The *Collins English Dictionary* defines "underwood" as "a less common word for undergrowth," in turn defining "undergrowth" as "small trees, bushes, ferns, etc, growing beneath taller trees in a wood or forest."  *Collins English Dictionary* (Harper Collins 10th ed. 2009).  The *American Heritage Dictionary of the English Language* defines "underwood" as "shrubs and small trees growing beneath taller trees; underbrush," in turn defining "underbrush" as "small trees, shrubs, or similar plants growing beneath the taller trees in a forest."  *American Heritage Dictionary* (Houghton Mifflin Co. 4th ed. 2009).  Finally, *Webster's New Universal Unabridged Dictionary* defines "underwood" as "small trees, shrubs, etc. that grow beneath large trees in woods or forests; undergrowth; underbrush."  *Webster's New Universal Unabridged Dictionary* 1995 (Simon and Schuster 2d ed. 1983).  It defines "undergrowth" as "small trees, shrubs, etc. that grow beneath large trees in woods or forests; underbrush."  *Id*. at 1993.  It defines "underbrush" as "shrubs, small trees, etc. in a wood or forest, growing under large trees; undergrowth; brush."  *Id*. at 1992.  It defines "brush" as "brushwood."  *Id*. at 233.  It defines "brushwood" as "brush; a thicket or coppice of small trees and shrubs; also, branches of trees cut off."  *Id*. at 234.

value of between $1 and $20.  (Dkt. No. 82, Attach. 6, at 138-40.)  As a result, the Court rejects

Mr. Jaquith's definition of a "tree" to the extent it includes seedlings, saplings, and small trees.

Having said that, the Court also rejects Defendants' argument (to the extent it is being

made) that, because Mr. Jaquith's definition of the word "tree" is without merit, the entirety of

his proposed testimony is therefore unreliable.  To the contrary, it appears, based on the current

record, that Mr. Jaquith still may offer relevant testimony regarding, at a minimum, the number

of "trees" damaged (based on the Court's clarification of the definition of that word), and the

conditions of Plaintiffs' property as a result of the trespass.  This is because Defendants appear

to concede that Mr. Jaquith is qualified as an expert in forestry, and the testimony and reports

that he will offer are relevant.[18]  In addition, it appears that Mr. Jaquith's testimony on these

issues (1) will assist the trier of fact, (2) is based on sufficient facts or data, and (3) is the product

of reliable principles and methods, which have been applied to the facts of this case.  As a result,

the Court denies without prejudice Defendants' motions to preclude the entirety of Mr. Jaquith's

expert testimony, and grants Defendants' motions only with regard to the introduction of

evidence regarding the definition of a tree as including seedlings, saplings, and small trees.[19]

---

[18]     For example, the Court notes that Mr. Jaquith testified that seedlings, saplings, and poles are different "tree" classifications, and that there were 280 "trees" six feet and taller that were damaged or destroyed as a result of the trespass.  (Dkt. No. 82, Attach. 6, at 30-31, 54, 192.)

[19]     The Court notes that, in reaching its decision, it has considered the arguments contained in Defendant Elexco's letter-brief in support of its motion to strike portions of an affidavit of Stephen E. Jaquith (Dkt. No. 95), as well as the arguments contained in Plaintiffs' response to that letter-brief (Dkt. No. 98).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for partial summary judgment against Defendant Elexco on Plaintiffs' two trespass claims (Dkt. No. 66) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' motion for partial summary judgment against the Anschutz Defendants on Plaintiffs' two trespass claims (Dkt. No. 66) is **DENIED without prejudice**; and it is further

**ORDERED** that Defendant Elexco's appeal (Dkt. No. 77) from Magistrate Judge Peebles' September 29, 2010 Order (Dkt. No. 69) is **DENIED**; and it is further

**ORDERED** that Plaintiffs' appeal (Dkt. No. 79)  from Magistrate Judge Peebles' October 12, 2010 Order (Dkt. No. 76) is **DENIED**; and it is further

**ORDERED** that the Anschutz Defendants' motion to dismiss Plaintiffs' Complaint for failure to join an indispensable party (Dkt. No. 80) is **DENIED**; and it is further

**ORDERED** that the Anschutz Defendants' motion for an order of common-law indemnification against Defendant Elexco (Dkt. No. 80) is **DENIED without prejudice as premature**; and it is further

**ORDERED** that the Anschutz Defendants' and Defendant Elexco's motions to preclude the expert testimony and reports of Stephen E. Jaquith (Dkt. Nos. 80, 82) is **GRANTED in part and DENIED in part** as set forth in Part III.D. of this Decision and Order; and it is further

**ORDERED** that the Anschutz Defendants' motion/cross-motion for summary judgment against Plaintiffs on all of their claims (Dkt. No. 80) is **DENIED without prejudice**; and it is further

**ORDERED** that Defendant Elexco's cross-motion for partial summary judgment on Plaintiffs' two trespass claims (Dkt. No. 81) is **DENIED**; and it is further

**ORDERED** that Defendant Elexco's motion for summary judgment against Plaintiffs on their conversion claims (Dkt. No. 81) is **<u>DENIED</u> without prejudice**; and it is further

**ORDERED** that counsel are directed to appear on **NOVEMBER 3, 2011 at 2:00 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **October 17, 2011,** and the parties are directed to engage in meaningful settlement negotiations prior to the 11/3/11 conference.

Dated: September 27, 2011
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge